UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 6:09-CR-08-GFVT-HAI-1 |
| v. ) | |
| ) | MEMORANDUM |
| JASON RAY MARCUM, ) | OPINION & ORDER |
| ) | |
| Defendant. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendant Jason Ray Marcum, through counsel, has filed a motion to suppress a statement he made to a United States Probation Officer that forms the basis for two supervised release violations that he currently faces. *See* D.E. 72. The United States has filed a response to Marcum's motion. *See* D.E. 73. For the following reasons, the Court will recommend **DENIAL** of Marcum's motion to suppress (D.E. 72).

I.

A brief discussion of Marcum's case provides background to his present motion. In May 2010, District Judge Van Tatenhove entered a judgment against Marcum following his guilty plea to manufacturing less than fifty marijuana plants and to being a felon in possession of a sawed-off shotgun. D.E. 25. Marcum faced higher penalties on the drug count because of a prior state felony drug conviction. *See* 21 U.S.C. § 851. He was sentenced to a total of 100 months of imprisonment and a four-year term of supervised release. D.E. 25 at 2–3. In October 2016, Marcum was released from the custody of the Bureau of Prisons ("BOP") to begin service on his term of supervision.

In April 2017, Defendant's supervised release was revoked after he was found guilty of: the use of controlled substances (methamphetamine and marijuana) and the associated criminal conduct of possession of those drugs; the use of alcohol; the failure to answer truthfully to inquiries by his probation officer; and the commission of a crime (possession of methamphetamine). *See* D.E. 57. At that time, Defendant was sentenced to twenty-one months of imprisonment with four years of supervised release to follow. *See id.* at 2–3. He was again released from BOP custody in August 2018.

On April 25, 2019, the United States Probation Office ("USPO") issued a Supervised Release Violation Report ("the Report") charging Marcum with one violation based on his failure to report to his probation officer as instructed. This conduct constitutes a Grade C violation under U.S.S.G. § 7B1.1(a)(3). On May 7, Judge Van Tatenhove issued a summons for Marcum to appear at an initial appearance on the alleged violation before the undersigned on May 21. *See* D.E. 61; D.E. 63. Marcum did not appear for that hearing as he had been directed, so a warrant was issued for his arrest. *See* D.E. 64. At the hearing, the Court provisionally appointed counsel for Marcum. *See id.* Marcum was arrested on June 13. *See* D.E. 68.

The day after Marcum was arrested, his supervising probation officer, Joey Tyler, visited him at the Laurel County Detention Center. During their conversation, Marcum admitted to Officer Tyler that he had used methamphetamine on June 12, 2019, and he signed a Positive Urinalysis Report stating his use. Officer Tyler did not provide Marcum with a *Miranda* warning before Marcum admitted to using methamphetamine.[1]

---

[1] In *Miranda v. Arizona*, the Supreme Court announced the rule that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The procedural safeguards require that, "[p]rior to questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.*

Following Marcum's admission, Officer Tyler prepared an Addendum to the Report that charges Marcum with two more violations. Specifically, the Addendum charges Marcum with the unlawful use of methamphetamine, a Grade C violation under the Guidelines, and the associated criminal possession of methamphetamine, a Grade B violation under the Guidelines. *See* U.S.S.G. § 7B1.1(a)(2)–(3).

Based on Marcum's underlying offenses of conviction, the statutory maximum revocation sentence he faces is two years of imprisonment. *See* 18 U.S.C. § 3583(e)(3). However, there is no maximum amount of supervised release that the Court may reimpose. *See* 18 U.S.C. § 3583(h). Further, the potential recommended penalties Marcum would face under the United States Sentencing Guidelines vary depending on whether he is found guilty of a Grade B or Grade C violation. Indeed, if Marcum is found guilty of the Grade B violation, based on his criminal history category of V at the time of his original convictions, his recommended range is eighteen to twenty-four months. *See* U.S.S.G. § 7B1.4(a). But, if he is found guilty of only a Grade C violation, his Guidelines range is seven to thirteen months. *Id.* Additionally, the Guidelines recommend mandatory revocation should Marcum be found guilty of a Grade B violation, but not if he is found guilty of a Grade C violation. *See* U.S.S.G. § 7B1.3(a).

## II.

On June 17, 2019, the Court conducted an initial appearance on all of Marcum's charged violations. *See* D.E. 67. A week later, on June 24, the parties appeared before the Court for a final hearing. *See* D.E. 69. At that hearing, Marcum stipulated to Violation No. 1. *See id.* at 1. As to Violations No. 2 and 3, defense counsel represented that, although Marcum would admit to making the statement to Officer Tyler regarding his use of methamphetamine, the defense would argue

that the statement should be suppressed because it was obtained in violation of Marcum's rights under the Fifth and Sixth Amendments.

To build a record concerning the environment in which Marcum admitted his use of methamphetamine to Officer Tyler, the government called Officer Tyler to testify. *See* D.E. 70. Upon questioning, Officer Tyler testified that, when he met with Marcum at the jail, he did not *Mirandize* Marcum before asking him questions about compliance with the terms of his supervised release. (Hearing at 21:47-21:57).[2] Officer Tyler said, at that time, Marcum admitted to using methamphetamine two days prior to their meeting and he signed an admission statement to that effect. (Hearing at 21:57-22:03). Officer Tyler further testified that, when he met with Marcum at the jail, he knew that counsel had been provisionally appointed for Marcum and that he did not contact defense counsel before going to speak with Marcum. (Hearing at 22:51-23:12).

According to Officer Tyler's testimony, his conversation with Marcum about Marcum's use of methamphetamine took place near the booking area of the jail; Marcum was not handcuffed during their conversation. (Hearing at 23:40-23:50). Moreover, Officer Tyler said he did not threaten Marcum in any way and that, if Marcum had requested to end their conversation, he would have honored that request. (Hearing at 25:07-25:36). Their entire meeting lasted about fifteen minutes. (Hearing at 26:38-26:44).

During their conversation, Marcum mentioned to Officer Tyler that he was scared of Officer Tyler and the government, and he exhibited a level of anxiety about the potential for further incarceration. (Hearing at 27:05-27:26). However, Marcum never requested an attorney before speaking with Officer Tyler, and Officer Tyler and Marcum never discussed that an attorney had

---

[2] Because the final supervised release violation hearing was memorialized via the Court's Electronic Court Reporting system, see Docket Entry 69, citations to that hearing will refer to the number of minutes and seconds that elapsed from the beginning of the audio recording.

4

been provisionally appointed for Marcum. (Hearing at 27:50-28:10). Finally, Officer Tyler explained that he has not been trained to provide *Miranda* warnings to individuals who are on supervised release because, in his understanding, supervisees must be accessible to their probation officers.[3] (Hearing at 28:30-29:00).

At the conclusion of Officer Tyler's testimony, defense counsel stressed that he was not arguing that Officer Tyler coerced or threatened Marcum to admit to using methamphetamine. (Hearing at 30:17-30:24). Rather, defense counsel submitted that Marcum "was in custody for custodial interrogation purposes." (Hearing at 30:25-30:28). Although defense counsel briefly explained the defense's position regarding suppression of Marcum's statement during the final hearing, the Court ordered briefing on his motion to suppress. *See* D.E. 69. The matter now stands submitted to the undersigned. *See* D.E. 72: D.E. 73.

### III.

Through his present motion, Marcum seeks to suppress the statement he made to Officer Tyler admitting his use of methamphetamine. In particular, Marcum argues that, because defense counsel had been provisionally appointed and because Officer Tyler did not provide him with any *Miranda* warnings, his statement was obtained in violation of his Fifth and Sixth Amendment rights. *See* D.E. 72-1 at 3. The Fifth Amendment provides in relevant part that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Relatedly, the Sixth Amendment provides in relevant part that, "[i]n all criminal prosecutions, the accused shall enjoy the right to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

---

[3] Officer Tyler also stated that probation does not use a form that warns defendants of their right to remain silent. (Hearing at 23:16-23:14).

As a foundational matter, supervised release violation proceedings are *not* criminal proceedings. *See United States v. Riley*, 920 F.3d 200, 207–08 (4th Cir. 2019). Therefore, courts have found that the statements of an individual who volunteered inculpatory information to his probation officer, rather than timely asserting his Fifth Amendment privilege, even in the absence of *Miranda* warnings, were not compelled. *See Minnesota v. Murphy*, 465 U.S. 420, 425, 440 (1984).

The Fourth Circuit's recent decision in *Riley* is particularly instructive regarding Marcum's Fifth Amendment argument. In that case, the Fourth Circuit addressed the scenario where an individual had been interviewed by his probation officer after he was arrested on a supervised release warrant. *See Riley*, 920 F.3d at 203. Like in the present case, the defendant in *Riley* was not read his *Miranda* rights before he admitted to using methamphetamine. *Id.* Then, at his revocation hearing, the defendant objected to the use of the statements he had made to his probation officer on Fifth Amendment grounds. *Id.* The district court rejected that argument, as did the Fourth Circuit. In doing so, the Fourth Circuit held "that because supervised release revocation proceedings are not criminal proceedings, the introduction of unwarned admissions made by Riley to his probation officer did not violate Riley's rights under the Self-Incrimination Clause of the Fifth Amendment." *Id.* at 209. Notably, that court rejected the defendant's arguments that he had made the statements in a coercive environment and that he did not have a true choice to exercise his right to remain silent. *Id.* at 205–07. Applying *Riley* to the facts of the present case, it is clear Marcum has no Fifth Amendment claim.

Similarly, Marcum's claim that his Sixth Amendment right to counsel was violated when Officer Tyler asked him questions about his compliance with the terms of his supervised release without informing him of his right to counsel or that counsel had been appointed fails upon close

inspection. Indeed, Marcum's argument that he has been denied the right to counsel at a "critical stage" of his criminal proceedings fails for the simple reason that supervised release violation proceedings are *not* criminal proceedings. *See id.* at 209. Moreover, defendants have no constitutional right to counsel within the context of supervised release violation proceedings. *See also United States v. Lester*, 76 F.3d 380, at *3 (6th Cir. 1996) (order) (table) ("There is no constitutional right to counsel at a supervised release revocation hearing."). Instead, a defendant's right to counsel during supervised release proceedings is derived from statute, see 18 U.S.C. § 3006A(a)(1)(C), (E), and Federal Rule of Criminal Procedure 32.1. *See Lester*, 76 F.3d at *3. In this case, although Marcum had counsel provisionally appointed, he never asserted his right to counsel, and he has not otherwise shown that Officer Tyler's questions to him violated his rights under the Sixth Amendment.

Finally, suppression would not be an appropriate remedy even if Marcum's rights had been violated as he has alleged. *Cf. Penn. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 359 (1998) (holding exclusionary rule does not apply in parole revocation proceedings). First, the Supreme Court has "repeatedly declined to extend the exclusionary rule to proceedings other than criminal trials." *See id.* at 363. Second, and perhaps more critically, "because the rule is prudential rather than constitutionally mandated, [the Supreme Court has] held it to be applicable only where its deterrence benefits outweigh its substantial social costs." *Id.* (internal quotation marks omitted).

In the supervised release context, any deterrence benefit is significantly outweighed by the social costs that would attend the use of the exclusionary rule. Indeed, on the present record, the Court sees no deterrence benefit as Officer Tyler only sought information relating to whether Marcum was complying with the conditions of his release. And, further, the social costs of excluding from the Court's consideration Marcum's admission to Officer Tyler that he had used

methamphetamine would limit the ability of the USPO, and by extension, the Court, to ensure that supervisees maintain an open dialogue with their probation officers, as required by the conditions of their supervised release. As the Supreme Court explained in *Scott*:

> The exclusion of evidence establishing a parole violation, however, hampers the State's ability to ensure compliance with these conditions by permitting the parolee to avoid the consequences of his noncompliance. The costs of allowing a parolee to avoid the consequences of his violation are compounded by the fact that parolees (particularly those who have already committed parole violations) are more likely to commit future criminal offenses than are average citizens.

*Id.* at 365. Thus, although the Court finds that Marcum has not established a violation of his constitutional rights, even if such a violation were to be found on this record, exclusion of Marcum's statement would not be warranted.

IV.

Accordingly, the reasoning above will be incorporated in a forthcoming recommended disposition following the proceeding set forth below. The Court will recommend, in that recommended disposition, that Marcum be found guilty of Violations No. 2 and 3.[4] The defense's right to object under 28 U.S.C. § 636(b)(1)(C) will not be triggered until the recommended disposition is entered.

**IT IS HEREBY ORDERED** that Defendant's final supervised release violation hearing **SHALL** recommence on **Thursday, August 1, 2019, at 2:00 p.m.,** at the United States Courthouse in London, Kentucky, for purposes of hearing from the parties concerning the appropriate sentence for all three violations.

This the 22nd day of July, 2019.



Signed By:
*Hanly A. Ingram*
**United States Magistrate Judge**

---

[4] Because Marcum stipulated to Violation No. 1, the Court will also recommend that he be found guilty of that violation. *See* D.E. 69 at 1.